■ TERRY BEATTY et al., Appellants, v NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Respondent. [599 NYS2d 13] —Judgment, Supreme Court, Bronx County (Bernard Burstein, J.), entered April 29, 1992, which, *inter alia,* granted the defendant's motion to set aside a jury verdict in favor of the plaintiffs in the sum of $518,500 on the first cause of action and dismissed said cause of action for failure to make out a prima facie case, unanimously reversed, insofar as appealed, on the law, the dismissal of the first cause of action is vacated and the jury verdict is reinstated, without costs.

The plaintiff, Terry Beatty, was the superintendent of a building owned and managed by the defendant located at 1359 Webster Avenue in the Bronx. After he was assaulted on two separate occasions on the premises in which he lived with his family, he instituted this action for damages, alleging that the defendant was negligent in that it breached Real Property Law § 231 by failing to bring proceedings to evict occupants of apartments in the building who engaged in criminal activity and negligent under common law, for failing to maintain minimal security precautions on the premises.

At trial, the plaintiff testified that after he became aware of drug activity taking place in apartments No. 2 and No. 4, he repeatedly notified the defendant's managing agents and the police. He also notified the agents that the security system in the building was not in working order and that those involved in the drug activity frequently broke off locks on the doors. However, the agents informed the plaintiff that funds were not available to bring legal action against the occupants of the apartments or to make the necessary repairs.

One of the managing agents, who testified at trial, confirmed that the locks on the doors of the building were frequently broken, that the building had been cited for violations and that the plaintiff had advised him of drug activity in some apartments. However, he maintained that he informed J. Howard Henderson, the person in charge of the defendant's New York City branch, but received no response. Although this agent testified that he was not provided with funds to initiate legal proceedings himself and could not reach Mr. Henderson, both Henderson and the defendant's president stated that the agent had the authority to bring proceedings to evict tenants and that he had been provided with a discretionary fund to accomplish this purpose.

The police raided apartment No. 4 in response to a call from the plaintiff and removed the people inside. The plaintiff then boarded up the apartment and notified the managing agent. The plaintiff was thereafter approached by a man who offered him $2,500 to open up the apartment. When the plaintiff refused, the man warned him that he was going to "run into an accident." The plaintiff informed the agent of this occurrence.

On July 7, 1986, after telling a man to stop doing drugs in the hallway of the building, the man attacked the plaintiff with a machete. When he returned from the hospital, the plaintiff noticed that the boards he had placed over the door of apartment No. 4 had been removed and that people were again entering to purchase narcotics. The managing agent then sent a telegram and a letter to Henderson to advise him of the conditions in the building. He received no response.

The plaintiff thereafter reported drug activity in apartment No. 2. On December 7, 1986, he was again attacked, this time by men wielding a knife and a gun.

The plaintiff's expert, a residential property management consultant, testified that a managing agent has a duty to notify the landlord of tenants engaged in criminal activity.

She added that the managing agent's failure to initiate eviction proceedings constituted a deviation from proper real estate management practice.

Following summations and charge, the jury returned a unanimous verdict in favor of the plaintiffs. In response to the court's interrogatories, the jury found that the July 7, 1986 attack on the plaintiff was related to illegal activity in apartment No. 4 and that the defendant or its managing agent was negligent prior to that date in failing to evict the apartment's occupants. This negligence of the defendant or its agent was found to be a proximate cause of the July 7th attack on the plaintiff. The jury also found that the lock on the inner door from the vestibule was broken at the time of this attack and had been continuously broken for a sufficiently long time prior to this date so that the managing agent should have been aware of the need to make repairs and should have arranged for repairs before July 7th. The disrepair of the lock on the door was found to be a proximate cause of the July 7th attack on the plaintiff.

With regard to the December 7, 1986 incident, the jury found that it was related to illegal activity in apartment No. 2 and that the defendant or its managing agent was negligent in failing, prior to that date, to evict the apartment's occupants. This failure was held to be a proximate cause of the attack on the plaintiff. Again the jury found that the lock on the inner door from the vestibule was broken at the time of this attack and that it had been continuously broken for a sufficiently long time prior to the attack so that the agent should have been aware of the need to make repairs and should have made such repairs prior to December 7, 1986. The disrepair of the lock was further found to be a proximate cause of the December 7th attack on the plaintiff. The jury awarded the plaintiff the sum of $516,000 in damages and his wife the sum of $2,500 for loss of services.

The Supreme Court granted the defendant's renewed motion to dismiss the first cause of action for failure to prove a prima facie case. As to the second cause of action, the court ordered a new trial with respect to damages unless the defendant consented to increase the award to the plaintiffs to $7,500. The parties do not challenge this ruling.

Contrary to the conclusion reached by the trial court, we find that the evidence was sufficient to establish the defendant's liability for the July 7, 1986 attack on the plaintiff. For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence, it must "first conclude

that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499). In order to determine whether a prima facie case has been established, the court must accept the plaintiff's evidence as true and accord him the benefit of every favorable inference that may be drawn therefrom *(Harding v Noble Taxi Corp.,* 182 AD2d 365; *Windisch v Weiman,* 161 AD2d 433; *Candelier v City of New York,* 129 AD2d 145).

The plaintiff introduced evidence at trial to support his allegations that drug-related activities occurred in the building over a period of time, that the defendant's agent was repeatedly informed of these occurrences, that the defendant breached its statutory duty pursuant to Real Property Law § 231 to evict the persons engaged in these activities and that this breach was the proximate cause of his injuries. Since it is undisputed that the landlord was repeatedly informed of ongoing criminal activity in the building and took no action to stop it, it was for the jury to determine whether the landlord's failure to evict the alleged drug dealers could serve as a predicate for liability for the plaintiff's injuries *(Simmons v City of New York,* 168 AD2d 230). Although in order to establish a prima facie case, the plaintiff had to show that the defendant's negligence was a substantial cause of the events which produced his injuries, he did not have to establish that the precise manner in which the incident happened, or the extent of his injuries, was foreseeable *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315).

The plaintiff also presented uncontroverted evidence establishing the existence of the broken door locks, of the notice provided to the defendant and of the defendant's failure to make the necessary repairs. There was, therefore, sufficient evidence adduced at trial from which the jury could have concluded that the defendant was negligent in its duty to maintain the premises in a reasonably safe condition *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Miller v State of New York,* 62 NY2d 506; *Keenan v Dayton Beach Park No. 1 Corp.,* 175 AD2d 862). Contrary to the conclusion of the trial court, a rational jury could have found that the commission of a crime in the building was a significant, foreseeable possibility *(Nallan v Helmsley-Spear, Inc., supra; see also, Kush v City of Buffalo,* 59 NY2d 26).

We have considered the parties' remaining contentions and

find them to be without merit. Concur—Carro, J. P., Rosenberger, Ellerin, Wallach and Rubin, JJ.